PHARES S. HORST, Plaintiff-Appellee, *v.* AVIE E. HORST, Defendant-Appellant

NO. 7021

FEBRUARY 18, 1981

HAYASHI, C.J., BURNS, J., CIRCUIT JUDGE KATO IN PLACE OF ASSOCIATE JUDGE PADGETT, DISQUALIFIED

OPINION OF THE COURT BY BURNS, J.

In this divorce case, defendant-wife contends that the lower court:

1. Failed to provide her with adequate relief during the *pendente lite* period;

2. Violated Hawaii Revised Statutes (HRS) § 580-47 (1976), as amended,

a) by making an unjust and inequitable division of property;

b) by requiring husband to pay only $3,000.00 of wife's attorney's fees and costs; and

c) by not requiring husband to pay any of wife's attorney's fees and costs on appeal; and

3. Erred in admitting and considering evidence of problems created by the presence of wife's mother.

We affirm the lower court's decisions.

In deciding this appeal, we are guided by the following considerations:

1. We conduct our review on the assumption that no error has been committed. Appellant-Wife has the burden of showing error. *Au-Hoy v. Au-Hoy*, 60 Haw. 354, 590 P.2d 80 (1979).

2. The decision of a family court judge in a domestic relations matter will be set aside only where there has been a manifest abuse of the judge's wide discretion in such matters. *Ahlo v. Ahlo*, 1 Haw. App. 324, 619 P.2d 112 (1980).

The lower court found husband's testimony to be more credible than wife's and resolved most, if not all, disputes of fact in favor of the husband. We do not find any of the lower court's findings to be clearly erroneous; therefore, Hawaii

Family Court Rules (HFCR), rule 52, requires that we conduct our review on the basis of said findings of fact.

Husband, then age 65, married wife, then age 52, on December 2, 1968. Prior to the marriage both parties were living in California; husband was a retired engineer and wife was an office worker earning $5,000.00 per year. The parties came to Honolulu, married, and thereafter resided in Maui. Husband filed his complaint for divorce on February 12, 1976. Pursuant to court order, wife left husband's residence on August 2, 1976. The three-day trial commenced June 16, 1977. The lower court's decision on the merits was issued on July 28, 1977.

At the time of the marriage, wife owned household goods, a residential lot valued at $5,000.00, and nine cemetery plots valued at $412.00 in California. She alleged that she brought more than $8,878.00 in cash into the marriage but the court found that she failed to prove it.

At the time of the marriage, husband's assets were tools, furniture, a $27,000.00 secured account receivable paid at the rate of $175.00 per month including interest, $17,000.00 in savings, a 1968 Ford Bronco automobile, a residence lot in Kula Kai, Maui, valued at $6,500.00, and a lot in Puna, Hawaii, valued at $4,000.00 minus an amount remaining due thereon. Further, he was drawing, in consequence of energies expended prior to the marriage, social security of $154.00 per month, retirement from Flintkote Company at $344.78 per month, and retirement from Armstrong Cork at $12.14 per month.

In May 1969, husband, as owner-builder, commenced construction of a house on the Kula Kai lot. The total out-of-pocket cost for the improvements to house and lot was $34,600.00. Ten thousand dollars ($10,000.00) of this amount was paid from a mortgage loan which wife cosigned and the balance was paid for husband's premarital cash and the proceeds from his premarital accounts receivable. The mortgage loan was fully paid on March 31, 1976.

During the marriage, husband received income from social security, his two retirement funds, and his part-time jobs as a real estate salesman and a consulting engineer. Both

parties generated cash flow from the sale of plants grown at the Kula Kai property and from Tropical Draperies, Inc., (TDI), a drapery business.[1]

In November 1969, wife's then 89-year-old mother arrived for the winter and stayed until September 1975. The parties received $90.00 per month for wife's mother's support, but this sum did not cover actual expenses related to her.

Between December 1975 and December 1976, husband gave $12,000.00 of cash accumulated in California from his secured account receivable to his two adult children from a prior marriage.

In response to wife's requests for relief *pendente lite*, the lower court issued orders which, *inter alia:* Required wife to vacate husband's residence no later than August 2, 1976; required husband to pay wife $7,500.00 from a joint savings account, stating that "a certain sum thereof shall be credited to wife as applicable to her living expenses during the pendency of this proceeding"; awarded husband temporary exclusive use and possession of the jointly owned 1973 Buick; ordered husband not to do business under the name "tropical draperies"; denied both parties' requests for attorney's fees and costs *pendente lite;* ordered husband to turn over to wife all TDI's property including a $3,996.18 deposit account; and authorized wife to use TDI's funds to pay herself a salary and to purchase an automobile for her use.

Between the time she terminated residence at the Kula Kai home and the commencement of the trial, wife received $7,963.00 from cash savings, $10,876.18 from TDI's accounts and $3,200.00 from the sale of the Ford Bronco (which by then was owned by TDI), plus whatever she made from TDI. She was not awarded any other *pendente lite* benefits.

The fair market value of the Kula Kai house and lot as of November 22, 1976 was $33,512.00 for the lot and $45,876.00

---

[1] Tropical Draperies, Inc., is a Hawaii corporation owned 95 percent by wife, 2.5 percent by husband, and 2.5 percent by wife's mother. The record fails to indicate the value of Tropical Draperies, Inc. Its largest gross annual income before deduction of cost of goods was $19,120.00 in 1974. It reported a taxable income of $3,020.00 in 1975. It also owns assets of undetermined value. Its initial paid-in capital was $1,000.00.

for the house, a total of $79,388.00.

At the time of the divorce, the parties owned property as follows:

Wife, then age 61, continued to own the residential lot, valued at $6,000.00, and the nine cemetery plots, valued at $1,350.00. She also owned 95 percent of TDI, jewelry valued at $2,700.00, and household goods and furniture.

Husband, then age 74, owned tools, furniture, household goods, the secured account receivable valued at $23,500.00, $5,408.00 in savings, the Kula Kai residence, valued at $80,000.00, and the Puna lot, valued at $6,000.00. He continued to receive his social security and retirement benefits.

The parties jointly owned a $1,238.00 savings account and a 1973 Buick valued at $2,200.00.

The lower court awarded the property as follows: Neither party was awarded alimony; each party was awarded their separate (marital and non-marital) property except that wife was permitted to retain all cash she received *pendente lite;* she was awarded husband's 2.5 percent of Tropical Draperies, Inc.; husband was required to pay her $17,000.00 cash in lieu of division of property and to pay $3,000.00 of her costs and attorney's fees; and husband was awarded the 1973 Buick. Each party was required to pay their own debts incurred since separation. The joint $1,238.00 savings account was not specifically awarded, but husband was given $1,238.00 credit as against the amount he was required to pay wife and her attorney so we conclude that the account was awarded to husband.

I. ALLEGED FAILURE TO AWARD ADEQUATE PENDENTE RELIEF.

HRS § 580-9 (1976)[2] authorizes the court to award *pendente lite* relief for spousal support and costs and attorney's

---

[2] § 580-9 Temporary support, etc.

After the filing of a complaint for divorce or separation the court may make such orders relative to the personal liberty and support of either spouse pending the complaint as he may deem fair and reasonable and may enforce the orders by

fees. The facts show that the court gave wife custody of liquid marital assets and authorized her to use those assets to obtain a car to use, to support herself and to pay attorney's fees and costs.

As her basis for alleging error, wife cites the statement in *Richards v. Richards*, 44 Haw. 491, 355 P.2d 188 (1960), which says that "the statute does not require a wife to impair her capital, . . ." We think the quote from *Richards* is limited to its facts. If one party has insufficient income but the other party has sufficient income for both, then neither's capital should be impaired *pendente lite* absent special circumstances. In this case, however, it does not appear that husband had sufficient income for himself, much less for both parties, even if we decided that his social security and retirement benefits are to be classified as "income". Therefore, it was necessary to impair capital. The lower court decided to impair jointly owned marital capital. We find no error in its decision.

## II. ALLEGED FAILURE TO JUSTLY AND EQUITABLY DIVIDE AND DISTRIBUTE PROPERTY AND AWARD COSTS AND ATTORNEYS FEES.

While we have some difficulty reviewing the lower court's decision because it did not specifically decide what sum was to be "credited to wife as applicable to her living expenses during the pendency" of the proceedings nor did it determine the value of some of the property owned at the time of marriage and at the time of its termination, there is enough information on record for us to decide this issue.

Wife contends that contrary to *Carson v. Carson*, 50 Haw. 182, 436 P.2d 7 (1967), the lower court placed undue emphasis on the fact that much of husband's property was separate property, excluding the other factors stated in HRS § 580-47 (1976), as amended.

---

summary process. The court may also compel either spouse to advance reasonable amounts for the compensation of witnesses and other expenses of the trial, including attorney's fees, to be incurred by the other spouse and may from time to time amend and revise the orders.

*Carson* prohibits undue emphasis. It does not prohibit emphasis. In our view, wife overly emphasizes the proportional relation between the assets awarded to husband and the assets awarded to her.

As required by HRS § 580-47 (1976), as amended, the lower court considered the respective merits of the parties, the relative abilities of the parties, the condition in which each party would be left by the divorce and all other circumstances of the case. As suggested by *Carson*, it examined the situation of the parties and their property at the inception of the marriage, during the marriage and at the ending of the marriage. It found that most of the assets owned by the parties at the time of the marriage were husband's premarital assets; that wife "aided, but not greatly, in the accumulation and preservation" of husband's assets; that husband's "ability to earn future income, . . . is doubtful, due to his advanced age and poor health"; that wife "is in relatively good health"; and that wife "can earn more income than" husband.

The facts indicate that even totally disregarding the $22,039.18 wife received *pendente lite,* and including the $12,000.00 husband gave to his children, she left the marriage with a greater percentage share of the total assets of the parties than she had at the inception of the marriage. The facts further indicate that much of the money used during the marriage came from husband's premaritally earned social security and retirement.

In view of the total record, we find no abuse of discretion in the division and distribution of property.

Concerning costs and attorney's fees at trial, we quote from *Farias v. Farias,* 48 Haw. 227, 233, 566 P.2d 1104, 1109 (1977):

> We have stated that an award of attorney's fees is in the sound discretion of the trial court, limited only by the standard that it be fair and reasonable. In determining the fair and reasonable amount of attorney's fees, the trial court should consider the financial ability of the parties and the amount necessary for the efficient prosecution or defense of the action. The latter depends on the character

of the litigation, services to be performed, and all other circumstances which may tend to lessen or increase the probable expenses of the litigation. [Citations omitted.]

Concerning costs and attorney's fees on appeal, we quote *Carson, supra,* at 188:

Allowance of attorney's fees to prosecute an appeal is within the trial court's discretion. The trial court must consider the financial condition of the wife and husband.

We conclude that the lower court must first exercise its discretion and determine whether or not to require one party to pay any of the other party's attorney's fees and costs. If it decides in the affirmative, then it must again exercise its discretion and decide the amount. The "fair and reasonable" standard noted in HRS § 580-9 (1976) and in *Farias, supra,* is not a mandate; it is a standard of maximum limitation.

In this case, husband is not contending that the amount of the wife's costs and fees which he was required to pay is unfair and unreasonable; wife is contending that he should have been required to pay more. Therefore, the issue is not whether the amount awarded is unfair and unreasonable; it is whether the lower court has abused its discretion by failing to award more. We find no abuse of discretion.

## III. ALLEGED IMPROPER CONSIDERATION OF FAULT.

Fault pertaining to personal conduct of the spouses toward each other has no bearing on the question as to which spouse has a better claim to the property sought to be divided in a divorce proceeding. *Richards v. Richards,* 44 Haw. 491, 355 P.2d 188 (1960). However, since a spouse's contribution to, or assistance in the accumulation or preservation of, the separate property of the other spouse are appropriate considerations, *Carson, supra,* it follows that a spouse's negative effect on the accumulation or preservation of the separate property of the other spouse is also an appropriate consideration.

The record clearly indicates that the lower court's consideration of the presence of wife's mother was properly related

and limited to the resulting financial impact and not to other improper considerations. Therefore, it did not err.

Affirmed.

*Robert G. Hogan* (with him on the brief John W. Cater) for defendant-appellant.

*Stephen E. Goldsmith* (with him on the brief James Krueger) for plaintiff-appellee.